**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------  X

CHARLES EQUIPMENT ENERGY SYSTEMS,                :
LLC,
                                                 :     Civil Action No.: _____
                            Plaintiff,
                                                 :

v.
                                                 :     **COMPLAINT**
INNIO WAUKESHA GAS ENGINES,  INC. and
DRESSER, INC. a wholly owned subsidiary of       :
General Electric Company d/b/a Waukesha
                                                 :     **JURY TRIAL DEMANDED**
                            Defendants.          :

--------------------------------  X

 Plaintiff, Charles Equipment Energy Systems, LLC ("Charles"), files this complaint against Defendants, INNIO Waukesha Gas Engines,  Inc. and Dresser, Inc. a wholly owned subsidiary of General Electric Company d/b/a Waukesha (together, "Waukesha"),  as follows.

## PRELIMINARY STATEMENT

1. This is a breach of contract case, and a fraud case.

2. Charles used warranted parts supplied by Waukesha, which were defective. Charles made a legitimate claim under the warranty provided by Waukesha. But Waukesha baselessly denied that claim.

3. To add insult to injury, Waukesha lied to Charles about investigating the warranty claim further.

## PARTIES

4. Charles, as is relevant to this action, is a business that specializes in the design, procurement and installation of complete power-generation systems.

5. Charles is an Illinois limited liability company, with a principal place of business in Illinois.

6.     The members of Charles are James F. DeRose and John K. Conway, both of whom are adult individuals that are domiciled in Illinois.

7.     Waukesha, as is relevant to this action, is the brand name of a manufacturer of engines and parts for those engines, which has been owned by various entities over the years.

8.     Defendant Dresser, Inc. is Delaware corporation.

9.     Upon information and belief, Dresser, Inc. acquired the Waukesha brand in the 1970s.

10.     Upon information and belief, Dresser, Inc. is or was a wholly owned subsidiary of the General Electric Company, a New York corporation with its principal place of business in Connecticut.

11.     Defendant INNIO Waukesha Gas Engines, Inc. is a Delaware corporation with a principal place of business in Wisconsin.

12.     Upon information and belief, INNIO Waukesha Gas Engines, Inc. acquired the Waukesha brand in November 2018 and is the brand's current owner.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Illinois, Delaware, New York, Connecticut and/or Wisconsin, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue is proper in this district because, pursuant to operative agreement between Charles and Waukesha—Waukesha's Gas Engines Express Limited Warranty ("Warranty")— "legal action *shall* be commenced in federal court with jurisdiction applicable to . . . New York County, New York." (*See* Warranty, a true and correct copy of which is attached as Ex. A at ¶ 10.B(a) (emphasis added).)

## FACTUAL BACKGROUND

### *The Project, the Engine Rebuild and the Waukesha Parts*

15.     Charles was engaged by Molex, a manufacturing company, to repair certain of Molex's power-generation infrastructure ("Project").

16.     As part of the Project, Charles had to rebuild a model L5794LT Waukesha gas engine ("Engine").

17.     On November 17, 2016, as part of that rebuild, Charles ordered—and Waukesha supplied—certain parts, including a WED 918-344 Main Bearing Set ("Parts").

18.     As noted, the Parts were covered by the Warranty. (Ex. A.)

19.     Charles ordered and received the Parts from a Waukesha distributor, Kraft Power Corporation ("Kraft").

20.     Charles installed the Parts in the Engine, as part of the rebuild.

21.     The installation was done pursuant to directions in Waukesha manuals and in line with training provided by Waukesha.

### *The Failure of the Waukesha Parts*

22.     On December 12, 2016, after the rebuild was finished, Charles started the Engine.

23.     The Engine promptly failed within mere minutes.

24.     Charles determined that the source of the failure was the Parts.

### *The Warranty Claim*

25.     Also, on December 12, 2016, Charles notified Kraft of the failure of the Parts.

26.     Charles worked with Kraft to make urgently needed repairs to the Engine.

27.     That work was done under the supervision of a Waukesha-trained technician.

28.     Charles also worked with Kraft to make a claim under the Warranty, which claim was designated "DPWTY-00858-2017" ("Claim").

29.     On January 6, 2017, a few weeks after Charles notified Kraft about the failure of the Parts, Kraft provided Charles with a long list of materials that Charles would need to provide to support the Claim.

30.     Kraft also represented to Charles that Kraft could not submit the Claim until "the repair is completed." (*Id.*)

31.     It took several months of work to repair the Engine.

32.     That repair cost Charles approximately $100,000.

33.     It took a few additional months to gather all of the paperwork that Kraft represented was necessary.

34.     On December 18, 2017, Kraft submitted the Claim on Charles's behalf. (*See* December 18, 2017 email confirmation and warranty claim form, a true and correct copy of which is attached as Ex. B.)

### Waukesha's Bogus Denial of the Claim

35.     Waukesha denied the Claim on January 11, 2018. (*See* January 11, 2018 email, a true and correct copy of which is attached as part of Ex. C.)

36.     According to Waukesha, it denied the Claim for two reasons: (1) that it was 36 weeks late; and (2) that there were missing invoices. (*Id.*)

37.     But neither of these purported bases stands up to scrutiny.

### The Claim was Timely

38.     The Warranty makes explicit that a Waukesha customer, like Charles, has 30 days to submit a claim to its distributor. (Ex. A, ¶ B.2.)

39.     This is the only deadline set forth in the Warranty.

40.     Here, Charles notified Kraft *the same day* that the Parts failed, Dec. 12, 2016.

41.     The Claim was not late, and certainly not 36 weeks late, as Waukesha contended.

### *The Claim was Fully Supported*

42.     Charles provided to Kraft, and Kraft provided to Waukesha, all of the invoices necessary to support the Claim. (*See* Ex. B.)

43.     There were no missing invoices, despite Waukesha's contention.

44.     Waukesha's denial of the Claim was a breach of the promises it made in the Warranty. (Ex. A.)

45.     As a result of Waukesha's breach, Charles suffered damages of approximately $100,000.

### *Waukesha Falsely Represented that it Would Further Investigate the Claim*

46.     In an attempt to resolve this dispute, representatives of Kraft communicated directly with Randy Rothman, a DP Warranty Operations Leader. (*See* June 26, 2018 email, a true and correct copy of which is attached as part of Ex. D.)

47.     Mr. Rothman reiterated that the Claim was denied on the (erroneous) bases that the claim was late and missing a parts invoice. (*Id.*)

48.     In addition to opining about other potential causes of the failure—none of which were relied upon by Waukesha in denying the Claim—Mr. Rothman also noted that Waukesha could analyze the Parts in a lab as part of a further investigation in the Claim:

> If all the parts are available to do the investigation we can look at our lead times in our materials lab and see when we could fit it in. We would also need information on the rebuild such as engine alignment, journal dimensions, plasti-gauge of the bearings and any other rebuild details that were checked or done to these parts.

(*Id.*)

49.      Charles had saved the Parts and had provided all relevant information to Waukesha, or stood ready to provide that information.

50.      But Waukesha never followed through, despite follow up.

51.      Charles now understands the truth—Waukesha never intended to follow through and its representations were false.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

52.      Charles hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

53.      The Warranty is a binding and enforceable contract.

54.      Waukesha's denial of the Claim, as set forth in detail above, was a material breach.

55.      As a result of Waukesha's material breach, Charles has been damaged, and continues to be damaged, in an amount to be determined at trial, but not less than approximately $100,000 in any event.

## SECOND CAUSE OF ACTION
### (Violation of the Duty of Good Faith and Fair Dealing)

56.      Charles hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

57.      Under New York law, each party to a contract has a duty of good faith and fair dealing toward the other party to the contract.

58.      Waukesha, by its actions and inactions as set forth herein, violated its duty of good faith and fair dealing to Charles.

59.      As a result of Waukesha's breaches of the duty of good faith and fair dealing, Charles has been damaged in an amount to be determined at trial.

60.     Waukesha acted intentionally, maliciously and in wanton disregard of Charles's rights and punitive damages should be awarded against Charles.

## THIRD CAUSE OF ACTION
### (Fraud)

61.     Charles hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

62.     Waukesha made a material misrepresentation to Charles regarding the analysis of the Parts in a lab as part of its further investigation into the Claim.

63.     At the time Waukesha made that representation, it had no intention of actually performing any such analysis or further investigating the Claim.

64.     Waukesha intend to deceive Charles with that knowingly false representation.

65.     Waukesha intended to induce Charles to rely on that knowingly false representation.

66.     Charles did, in fact, rely on Waukesha's knowingly false representation.

67.     Charles was damaged as a result, and continues to be damaged, in an amount to be determined at trial, but not less than approximately $100,000 in any event.

## PRAYER FOR RELIEF

WHEREFORE, Charles prays that the Court enter judgment in its favor and against Waukesha, containing the following relief:

A.      Determine the damages sustained by Charles as a result of Waukesha's violations of law, and award those damages, including punitive damages, against Waukesha and in favor of Charles, plus such pre-judgment and post-judgment interest as may be allowed by law;

B.      An award of costs that Charles incurred in this action, including, but not limited to, expert witness fees, as well as reasonable attorneys' fees and costs to the fullest extent permitted by law; and

C.      Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Charles hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully submitted:

s/ *Lijue T. Philip*
STRADLEY RONON STEVENS & YOUNG, LLP
By: Lijue T. Philip, Esquire
100 Park Avenue, Suite 2000
New York, NY 10017
T: 212.812.4124
E: lphilip@stradley.com

 - and -

*Of Counsel*
Benjamin E. Gordon, Esquire
*Motion for admission pro hac vice pending forthcoming*
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: 215.564.8752
E: bgordon@stradley.com

*Counsel for Plaintiff, Charles Equipment Energy Systems*

Date: April 1, 2022