UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2023

CHARLES EQUIPMENT ENERGY SYSTEMS, LLC,

                 Plaintiff,

-against-

INNIO WAUKESHA GAS ENGINES, INC. And DRESSER, INC. a wholly owned subsidiary of General Electric Company d/b/a Waukesha,

                 Defendant.

Case No.: 22 Civ. 2716 (CM)

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS**

McMahon, J.:

Defendants move for the imposition of sanctions against Plaintiff for filling a frivolous lawsuit. That motion is GRANTED.

**STATEMENT OF FACT**

On April 1, 2022, Plaintiff filed this lawsuit, alleging three causes of action against Defendants: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) fraud. (Compl.). The claims arose out of Defendants' provision of an engine part to Plaintiff, a part that allegedly caused the engine owned by Plaintiff to fail. The Complaint in this action affirmatively alleges that Plaintiff knew the part was defective on December 12, 2016 (*See* Order, Dkt. No. 29 at 6). Plaintiff submitted a claim under the warranty that covered the part in December 2017; that claim was denied on January 11, 2018, on the ground that the claim had been submitted 36 weeks late and did not include all relevant invoices. (*Id.*)

On May 6, 2022, Defendants sent Plaintiff's counsel a so-called "safe harbor letter" pursuant to Fed. R. Civ. P. 11(b). The letter described the Plaintiff's claims as baseless and without any arguable basis in law or fact, and advised that Defendants intended to move for sanctions unless the lawsuit was withdrawn within the 21-day period provided by the Rule. (Dkt. No. 33-1) (the "Safe Harbor Letter"). The letter, which was six single spaced pages long and included four lengthy footnotes, explained in copious detail the reasons why Defendants alleged that each of the claims in the complaint was frivolous and should be withdrawn. (*Id.*) It included citations to legal authority in support of the arguments made.

Attached to the Safe Harbor Letter was a Notice of Motion for Sanctions, which stated as follows:

> PLEASE TAKE NOTICE that the undersigned attorney for defendant INNIO Waukesha Gas Engines Inc. (INNIO) herein, will move this court....for an order granting INNIO's Motion for Sanctions Pursuant to Fed. R. Civ P. 11, and imposing sanctions against Plaintiff Charles Equipment Energy Systems and/or counsel for Plaintiff.
>
> This motion is based on the fact that the claims in the complaint are not warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law, are not based on factual contentions for which there is evidentiary support, and have been filed to harass INNIO and needlessly increase the cost of litigation. In particular:
>
> 1. The first and second causes of action are time-barred pursuant to N.Y.U.C.C. 2-725;
>
> 2. The second cause of action fails to state a claim for breach of the duty of good faith and fair dealing; and
>
> 3. The third cause of action fails to state a claim for fraud.

(Dkt. No. 33-1 at 8-9).

Plaintiff neither responded to the Safe Harbor Letter nor withdrew the lawsuit. (Dkt. No. 32 at 6). Therefore, on June 15, 2022, Defendants filed the Motion to Dismiss the Complaint (Dkt.

No. 21), to which was attached a brief that repeated all of the legal arguments, citing all of the authority, that appeared in the Safe Harbor Letter (Dkt. No. 22). The court granted the motion and directed that the Complaint be dismissed with prejudice on October 24, 2022. (Dkt. No. 29). It agreed with every argument propounded by the Defendants: the two contract-based claims were time barred and the fraud claim (as well as the duplicative claim for breach of the covenant of good faith and fair dealing) failed to state a claim. The court rejected as utterly lacking in merit Plaintiff's contention that its claims had been equitably tolled. (Dkt. No. 29).[1]

Following through with their intention, Defendants filed their Notice of Motion for Sanctions on November 11, 2022. (Dkt. No. 31). Defendants allege Plaintiff's claims were not merely unsuccessful, but constitute "frivolous, unfounded and vexatious pleading[s]." (Dkt. No. 32, at 2). Plaintiff argues it "advanced good faith, colorable arguments under existing authority, and their interpretation of the factual record." ("Opp." or "Opposition Brief," Dkt. No. 37 at 5).

---

[1] At the outset, the court confesses error in the original decision, and I am issuing an amended decision together with this order. In the original decision I accepted without examination INNIO's contention that the statute of limitation expired on December 12, 2020 – four years after the Plaintiff concluded that the part it had purchased from Defendants was defective and caused its engine to break down. In the ordinary course that would have been correct; Plaintiff did not contend that, absent equitable tolling, the statute of limitations would have run on that date. Indeed, all parties (including the court) overlooked the fact that, in light of the COVID pandemic, Governor Cuomo had issued Executive Order 202.8, which tolled the statute of limitation for the filing of any claim brought under New York law (including the claims in suit) during the period March 20, 2020 through November 3, 2020. This added a total of **228 days** to the otherwise-applicable four-year limitations period. So, the statute of limitations on Plaintiff's breach of warranty claim actually ran on July 28, 2021, rather than December 12, 2020.

Unfortunately for Plaintiff, correcting this error does not help its present cause. Plaintiff did not file its lawsuit until April 1, 2022 – still long after the statute had expired. The irony – that even without equitable tolling, Plaintiff actually had the benefit of a lengthy toll of the limitations period, and still did not manage to file this case on time – is not lost on the court.

3

## DISCUSSION

### I. Legal Standard for Fed. R. Civ. P. Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure sets forth the mechanism for imposing sanctions, providing in relevant part that:

> By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversing of existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information or belief.

Fed. R. Civ. P. 11(b).

Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy. *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005). While the imposition of sanctions is within the province of the district court, "any such decision [should be] made with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). The decision of whether to award sanctions under Rule 11 rests firmly

within the discretion of the trial court. *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *Amorosa v. Ernst & Young LLP*, 2010 WL 245553, at *3 (S.D.N.Y. Jan. 20, 2010).

The implementation of Rule 11 requires a careful balancing of two interests of the court: reprimanding egregious behavior and avoiding restraint of creative legal arguing. However, that required balance does not undermine Rule 11's imposition on counsel of the "affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). In the Second Circuit, "[a]n argument constitutes a frivolous legal position for the purposes of Rule 11 sanctions if, under the objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d. Cir.1995) (quoting *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d. Cir.1994)). "Accordingly, courts in the Second Circuit have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." *de la Fuente v. DCI Telecommunications, Inc.*, 259 F.Supp.2d 250, 262 (S.D.N.Y. 2003).

### A. Defendant satisfied Rule 11's Safe Harbor requirements

Before imposing sanctions, the court must be satisfied that the requirements of Rule 11 were strictly followed. Plaintiff argues that they were not; I disagree.

Rule 11 provides, in pertinent part:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged

5

paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2). Plaintiff argues that Defendants did not comply with Rule 11's safe harbor provision, in that it did not serve Plaintiff with a "motion" for sanctions 21 days prior to filing said motion with the court. It urges that the request for sanctions be denied on that basis.

The safe harbor provision was added to Rule 11 "with the intention of affording a party a '"safe harbor" against motions under Rule 11' whereby that party would 'not be subject to sanctions . . . unless, after receiving the motion, it refuse[d] to withdraw that position or to acknowledge candidly that it d[id] not . . . have evidence to support a specified allegation.'" *Safe-Strap Co v. Koala Corp.*, 270 F. Supp. 2d 407, 413 (S.D.N.Y. 2003) (citing Fed. R. Civ. P. 11 Advisory Committee's Notes (1993 Amendments)). It requires a party who believes his opponent has filed a paper without having a good faith basis for doing so to serve the non-moving party with a "motion" (Fed. R. Civ. P. 11(c)) at least 21 days before actually filing the motion in court. The purpose of serving the motion in advance is to give the non-moving party time to withdraw the offending pleading. The requirement is absolute; a court may not grant a motion for sanctions if the moving party fails to serve the "motion" at least 21 days before filing it with the court. Moreover, "[a]n informal warning . . . letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period." *Star Mark Mgmt., Inc. v. Koon Chun Hing Key Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("*Star Mark*").

The relevant facts here are as follows: Defendants' lawyer sent Plaintiff's counsel a safe harbor letter, to which Defendants attached a Notice of Motion for sanctions that not only parroted the language of Rule 11, but explained precisely why each claim in the complaint was

6

deficient. (*See* Dkt. No. 33-1). Defendants did not attach a brief or any affidavit to the Notice of Motion that was delivered with the Safe Harbor Letter; however, as noted above, the text of the lengthy letter was the equivalent of a brief, in that it explained in detail the arguments summarized in the Notice of Motion and cited authority in support of those arguments. (*Id.*) When Plaintiff failed to withdraw the Complaint after 21 days, Defendants moved to dismiss the action, which motion was granted. (Dkt. No. 21; Dkt. No. 29). Then, having convinced the court that the case was meritless, the Defendants filed, separate from any other motion, the identical Notice of Motion for sanctions that had been attached to the Safe Harbor Letter – which spelled out each of Defendants' arguments for why the claims lacked merit and were sanctionable. (Dkt. No. 31). The Safe Harbor Letter itself, which went into even greater details about why the claims had to be dismissed, was attached to the Notice of Motion – just as it had been when the Notice of Motion was served on Plaintiff's counsel. Added to what had already been served was a brief that argued why sanctions were appropriate in this case.

The actual Notice of Motion for Sanctions was concededly filed with the court more than 21 days after it was first sent to the Plaintiff's lawyer. The only question is whether what was delivered to Plaintiff's counsel comported with the requirements of Rule 11(c).

It did.

In the Second Circuit, a party can "attach[] to its [safe harbor] letter a copy of its notice of motion for sanctions," and that form of delivery satisfies Rule 11. *See Star Mark*. Moreover, the fact that Defendants did not send Plaintiff's counsel a fully briefed motion for sanctions is of no moment, because – again in the Second Circuit -- a party can "[meet] the procedural requirements of the safe harbor provision of Rule 11(c)(2) . . . even [if] it d[oes] not serve at that time supporting

7

affidavits or a memorandum of law." (*Id.*) Or, put otherwise, Defendants need only to "serve[] its *notice of motion*," not a fully brief motion, "more than 21 days before it files the motion with the district court; the motion [is] made separately from any other motion; and the notice of motion describe[s] the specific conduct that allegedly violated Rule 11(b)." (*Id.*) (emphasis added).

The controlling case, from which the above quotations are taken, is *Star Mark Mgmt., Inc. v. Koon Chun Hing Key Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012). The facts in *Star Mark* are virtually indistinguishable from the facts in this case – so much so that is appears to the court that Defendants' lawyers used *Star Mark* as their guide in preparing the relevant papers.

In *Star Mark*, the defendant sent the plaintiff a safe harbor letter, to which was attached a Notice of Motion for Rule 11 sanctions. The notice of motion listed six separate grounds justifying defendant's assertion that plaintiff's complaint was frivolous. While no brief or affidavits were attached to the notice of motion, the safe harbor letter itself contained citations to legal authorities supporting defendant's assertion that the lawsuit was frivolous.

The district court rejected plaintiff's argument that the defendant had not complied with Rule 11 by attaching its Notice of Motion for sanctions, but no brief or other supporting papers, to a safe harbor letter. The Court of Appeals affirmed.[2]

In this case, Defendants did all of the following: (a) served the Notice of Motion for Sanctions via U.S. mail on May 6, 2022, (b) did not serve any other motion at that time, although

---

[2] Plaintiff relies heavily on *Star Mark*, but it is not at all clear why, since the Court of Appeals rejected in that case arguments identical to those made here. It is particularly troubling that the plaintiff quoted language from *Star Mark* out of context, without including the actual dispositive language of the case, which emphatically rejected its position. Nor did Plaintiff's counsel tell the court that the party espousing its position lost the case. This court expects better from the attorneys who practice before it.

Defendants, in reliance on *Star Mark*, did enclose the Notice of Motion for Sanctions in the Safe Harbor Letter, (c) described the claims in the Complaint as "not warranted by existing law or by a nonfrivolous argument . . .[and] are not based on factual contentions for which there is evidentiary support;" and (d) identified and explained the specific reasons why the claims were deficient. In short, Defendants did exactly what the defendant who successfully moved for sanctions in *Star Mark* did. The two cases are effectively indistinguishable.[3] This means that Defendants complied with all the requirements of Rule 11.

### B. The Motion for Sanctions is timely.

Plaintiff's argument that this motion is untimely depends for its force on the contention that Defendants did not comply with Rule 11. Since that argument lacks merit, there is no basis to conclude that this motion is untimely.

### II.   Application of Rule 11(b) to the Claims

Plaintiff asserted two causes of actions against Defendants related to the contract-warranty between the parties: (1) breach of contract for rejecting Plaintiff's warranty claim and (2) breach of the duty of good faith and fair dealings (Compl., ¶¶52-67). As this Court concluded, both claims were long time-barred at the time Plaintiff filed the Complaint. (Dkt. No. 29 at 6, 8). The standard for sanctions is whether counsel met their affirmative duty to reasonably inquire into the facts and

---

[3] In fact, the only difference this court can discern between the instant case at *Star Mark* is that, in *Star Mark*, when the defendant served its actual notice of motion for sanctions, it relied on fewer grounds than it had listed in the notice of motion sent to plaintiff's counsel with the safe harbor letter. Here, the motion for sanctions, like the motion to dismiss, relied on every ground that was listed in the notice of motion and fulsomely discussed in the safe harbor letter.

law regarding the contracts claims. *See Bus. Guides, Inc. v. Chromatic Comm'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).

### A. *Plaintiff had no basis to bring its contracts-related claims because they were barred by the statute of limitations.*

Defendants argue that Plaintiff's counsel should be sanctioned because (1) Plaintiff's contracts-related claims are time-barred, and (2) Plaintiff's argument that the statute of limitation was tolled is foreclosed by existing law.

Both of the alleged breached of contract were governed by a four-year statute of limitations, which is found in New York's Uniform Commercial Code § 2-725. (Dkt. No. 29 at 5). No competent attorney could have concluded otherwise. And, in fact, Plaintiff did not argue, in opposition to the motion to dismiss, that the claim had not accrued on December 12, 2016, or that the statute was longer than four years.[4] Its argument against dismissal was predicated entirely on equitable tolling. And as this Court found in its decision, existing law barred Plaintiff's equitable tolling claim. (*Id.* at 7).

In opposing sanctions, Plaintiff asserts that it had a good faith basis to argue that the statute of limitations had been equitably tolled. This, with respect, is nonsense. Plaintiff's equitable tolling argument was both unsupported by any facts and barred by existing law, and there was no non-frivolous argument for modifying existing law or for establishing new law.

Equitable estoppel applies when a plaintiff proves "with particularity[] the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery

---

[4] *See* n.1, *supra*.

10

of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Stat. Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 482 (S.D.N.Y. 2000). "Under this doctrine, the statute [of limitations] does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974). "When deciding whether to toll the running of the statute of limitations, the issue is not whether [p]laintiff was in possession of all the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011). Equitable tolling may be invoked only when the defendant concealed some facts that prevented the plaintiff from filing a lawsuit. That was not the case here.

Plaintiff alleges it did not file a lawsuit, and instead slept on its rights, because Defendants said they would re-examine their denial of Plaintiff's claim. But the law is quite clear that even the pendency of settlement negotiations (which do not appear to have been ongoing) does not toll the statute of limitations. "[T]he mere existence of ongoing settlement negotiations is insufficient to estop a party to assert the statute of limitations as a defense." *Thomas v. Gillespie*, 385 F. Supp. 2d 240, 248 (S.D.N.Y. 2005).

Plaintiff's argument, reduced to its essence, is that it reasonably construed the following statement by Defendant's employee Randy Rothman -- "If all the parts are available to do the investigation we can look at our lead times in our materials lab and see when we could fit it in. We would also need information on the rebuild..." -- to mean, "As long as we might pursue a further investigation, you don't need to worry about filing suit, about the statute of limitations, or

11

any legal concerns." (Compl., Dkt. No. 3-4 at 3). Framing Plaintiff's argument in those terms exposes its utter lack of merit. Plaintiff was well aware that Defendants had rejected its warranty claim, and that this had legal implications; indeed, in January 2018 – immediately after the warranty claim had been rejected on the basis that it (like this lawsuit) had been submitted far too late -- Plaintiff had sent an email to one of INNIO's distributor, Kraft Power, asking whether it should be contacting its lawyers. (*Id.*) Nothing in Rothman's email, which was forwarded to Plaintiff on June 26, 2018, misrepresents or conceals anything from Plaintiff, or suggests that there was no need for Plaintiff to pursue its claims in courts. Rothman's email does not mention the word "lawsuit" or "statute of limitations" or condition any additional inquiry that Defendants might decide to undertake on refraining from suit. In fact, Rothman's email (Exhibit 4 to the Complaint) goes on in considerable details about the fact that the warranty claim had been rejected for being submitted late; it also disputes Plaintiff's contention that the engine failure was caused by Defendants' part. No reasonable businessman or competent lawyer could possibly read that email in a manner that would toll the statute of limitations. Frankly, it reads like an invitation to sue.

Moreover, Rothman's statement was sent to Plaintiff in June of 2018. Whether the statute ran in the ordinary course (December of 2020) or on the extended date occasioned by the COVID toll (in July of 2021), long before these dates came and went, it had to have been clear to Plaintiff that doing nothing (i.e., not suing) was not getting anywhere. Even when equitable tolls are imposed, they only last for a reasonable period. Not a single fact in the record suggests that Defendants did anything that would justify Plaintiff in concluding that there was some sort of ongoing investigation during the almost four years between the time Rothman sent his email and the time Plaintiff finally brought suit. Indeed, aside from that single email, sent in July of 2018,

Plaintiff cites not a scintilla of evidence to suggest that anyone was doing anything to try to resolve this dispute short of litigation during the four years. The facts to support an equitable estoppel of any length, let alone of the length proposed by Plaintiff, are simply not there.

Finally, on these facts, there is no possible non-frivolous argument for modifying or overturning existing law. And Plaintiff makes no such argument. Plaintiff insists only that Defendants represented they would investigate Plaintiff's claims further if Plaintiff "met Waukesha's conditions and refrained from suing Waukesha to work towards and amicable resolution." (Opp. at 10-11). That is a fact-based assertion, which affords Plaintiff no basis for changing the law. And as seen above, Plaintiff's argument about some "condition" imposed by Defendants is not grounded in any actual fact.

Defendants had no legal obligation to state affirmatively that they were not interested in settling before Plaintiff was required to protect its rights in court. There is not a single fact in the record that suggests that Defendants prevented Plaintiff from filing suit, or misled it for almost four years from thinking that the only way to obtain relief would be to file suit, or that filing a lawsuit would have violated a condition of continuing the investigation or brought an end to discussions. In our system, plaintiffs do not need permission from defendants to file suit; and parties who want to forestall the running of the limitations period in order to engage in discussions aimed at resolving a dispute can accomplish that goal by signing tolling agreements to that effect. In the absence of such agreement or any concealment of facts – neither of which is present here – the limitations period runs. Any argument that the law should be modified or extended to impose an equitable toll on the limitations period if a party wants to try to reach an amicable settlement, or to do away with the practice of requiring parties to affirmatively agree to toll the statute of limitations in such a context, would be frivolous indeed.

### *B. The second contracts claim is deficient on two grounds.*

The breach of the covenant of good faith and fair dealing claim was dismissed on the ground that it was time-barred,[5] but it could also have been dismissed under long-settled principles of New York law, which hold that no such claim exists in the circumstances here pleaded – as any competent lawyer should have known.

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Breach of the implied covenant of good faith and fair dealing "is merely a breach of the underlying contract." *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991).

The facts underlying both Count 1 and Count 2 are identical: a part was sold under warranty; the part allegedly failed; Defendants wrongfully refused to honor its warranty. Therefore, no separate contract claim for breach of the duty of good faith and fair dealing exists. This principle of law is so well-settled that Plaintiff does not even try to suggest any non-frivolous reason as to why it should be modified or overturned in this case.

---

[5] The covenant of good faith and fair dealing in implied in every contract governed by New York law. And since this particular contract arises under the U.C.C., and so has a four, rather than a six, year statute of limitations for claims for breach, this claim was also subject to a four-year time bar. The reasons why the equitable tolling argument was both frivolous under the existing law as applied to the facts of this case and not suited to modification or rejection are identical for both breach of contract claims in this case. I need not repeat what I have already said on that subject.

### *C. There was no basis to assert a fraud claim.*

It is equally clear Plaintiff's fraud claim was frivolous and absolutely no chance of succeeding. Plaintiff alleges that it was "led [] to believe" that Defendants would continue to investigate the warranty claim and that Defendants failure to do so constitutes fraud. (Opp. at 10). But fraud must be pleaded with particularity, and Plaintiff's Complaint failed to identify a single statement or action by the Defendants on which Plaintiff could have reasonably relied to refrain for suit. The discussion at pages 11-13, *supra*, explains in detail why the facts to do not support a non-frivolous assertion that Defendants promised to do anything for Plaintiff. Moreover, as a well-settled matter of New York law, a promisor's failure to perform his promise does not amount to fraud. In *Helios Int'l S.A.R.L. v. Cantamessa USA*, "an alleged promise to return goods" was "insufficient to plead fraudulent intent." 23 F.Supp.3d 173, 193 (S.D.N.Y. 2014). In *Century Pac., Inc. v. Hilton Hotels Corp*, the "mere failure to perform a previous promise [was] alone insufficient, as a matter of law, to raise an inference of intent to defraud." 528 F.Supp.2d 206, 224-25 (S.D.N.Y. 2007). Rather, New York law holds that, "A failure to perform promises of future acts is merely a breach of contract to be enforced by an action on the contract. A cause of action for fraud does not arise when the only fraud charged relates to a breach of contract." *Non-Linear Trading Co., Inc. v. Braddis Assocs. Inc.*, 243 A.D.2d 107, 118 (1st Dep't 1998).

Plaintiff offered not a single plausible argument for why that law did not control on the facts of this case – probably because there is no such non-frivolous argument. Nor does Plaintiff make any argument at all for why these propositions of law should be modified or overturned. As broken promise alone is not evidence of fraud, there was no good faith basis to assert Plaintiff's third cause of action. I can only conclude that it was a frivolous attempt to circumvent the statute of limitations applicable to its contracts claims.

15

### D. *Sanctions are warranted for subjecting Defendants to suit on these claims.*

Plaintiff cites the court to a number of cases in which courts declined to issue Rule 11 sanctions, even though time-barred claims were asserted. And it tries to distinguish the principal authority on which Defendants rely for the imposition of sanctions.

On a sanctions motion, the problem with citing to other cases is that the court's ultimate decision is both discretionary decision and entirely fact-dependent. As a result, the fact that sanctions were not awarded in Case A provides little or no guidance to a court that is evaluating the propriety of sanctions in Case B.

That is certainly true of the cases on which Plaintiff relies.

For example, the court denied a Rule 11 motion for sanctions (in a footnote and without any substantive discussion of the Rule 11 factors) in *Hoodack v. Int'l Bus. Machines, Inc.* 202 F. Supp. 2d 109 (S.D.N.Y. 2003). In that case, as in this one, the plaintiff's claims were time barred; in that case, as in this one, the plaintiff had argued that the statute of limitations was tolled. But the plaintiff in that case did not argue equitable tolling; he argued that the statute was tolled while he exhausted administrative remedies – and entirely different context for sanctions purposes. *Hoodack v. Int'l Bus. Machines, Inc.*, 202 F.Supp.2d 109, 113 (S.D.N.Y. 2002).

Plaintiff also cites *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563 (D.N.J. 2002), where the court found sanctions were not warranted despite the fact that the plaintiff filed clearly time-barred claims. But the facts in that case are radically different than the facts in this case. In *Del Sontro*, the plaintiff, the Senior Vice President of Cedant, refrained from bringing suit against Cedant for securities fraud because he believed that he was a member of the class that had had brought similar claims against his employer. He was not, in fact, a member of the class, even

though he was a shareholder in the company; the class as certified by the court excluded "officers and directors of Cendant and its subsidiaries and affiliates." *Del Sontro*, 223 F. Supp. 2d at 568. Nonetheless the plaintiff received periodic updates from his broker about the class action, and he was at one point told by the broker that he met the eligibility requirements for class membership. (*Id.*) Also, when the plaintiff asked his employer's general counsel if he should opt out of the class, the general counsel did not advise plaintiff that he was ineligible to participate in the class action, but instead said that employees were encouraged to remain in the suit. (*Id.*) None of these facts "equitably tolled" the statute of limitations, or saved plaintiff's claims from dismissal when he finally realized that he was not a class member and brought suit on his own. But on those facts, the *Del Sontro* court declined to award sanctions, finding that "Plaintiff had some basis for asserting his claims." (*Id.* at 582). The same cannot be said with respect to the Plaintiff at bar.[6]

Plaintiff is correct that *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003) ("*de la Fuente*") -- a case cited by Defendants in favor of an award of sanctions -- is readily distinguishable and so not good precedent on which to rely. Under the Private Securities Law Reform Act (PSLRA), an award of sanctions was mandatory under the circumstances of that case; here sanctions are purely discretionary Moreover, equitable estoppel – which the plaintiff in *de la Fuente* had argued – had been held by the United States Supreme Court to be unavailable to toll the statute of limitations in securities fraud cases. *de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250, 261 (S.D.N.Y. 2003). However, the fact

---

[6] Plaintiff's citation to *Jackson v. Hall Cnty. Gov't*, 568 F. App'x 676 (11th Cir. 2014) is, like its reliance on *Star Mark*, incomprehensible, since in *Jackson v. Hall Cnty. Gov't* the district court reject an equitable tolling argument and the Eleventh Circuit affirmed.

that *de la Fuente* offers no support for Defendants' motion does not mean that sanctions should not be awarded in this case.

Finally, Plaintiff distinguishes this case from *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281 (2d Cir. 1986) – which Defendants also cite – because, at the time *Norris* was decided, Rule 11 sanctions were mandatory, not discretionary (they became discretionary when the Rule was amended in 1993). But Defendants do not argue that an award of sanctions is mandatory in this case. They cite *Norris* as an example of a fact set that justified sanctions as a matter of discretion because, as the Second Circuit held, the claims were time-barred, and, "It is patently clear that the [plaintiffs] had absolutely no chance of success under existing precedents, and no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d at 1288 (2d Cir. 1986).

As I said previously, I find none of these citations to other cases particularly helpful. The task confronting me is not to find a way to wedge this case within some precedent set in another case, but to apply the statutory standards of Rule 11 to the unique facts of this case. I recognize that, in some cases where time-barred claims were filed and dismissed, courts have declined to award sanctions. And in others, courts did award sanctions. To which I say: So what? The only "precedent" that is genuinely relevant here is the underlying decision in this case granting the motion to dismiss denying leave to amend; it is on that record that the purely discretionary decision of whether or not to impose sanctions rests. In this case, the argument for why Plaintiff's contract claims were not barred by limitations was weak and utterly unconvincing. I thus believe, as a matter of my discretion, that putting Defendants to the trouble and expense of filing a motion to dismiss was sanctionable conduct.

## CONCLUSION

This Court does not impose sanctions lightly. But in this case, the claims asserted were so obviously lacking in factual or legal support that the motion for sanctions should be granted. Sanctions are awarded in the amount of costs and attorneys' fees reasonably incurred to make the successful motion to dismiss. The court will give Defendants ten business days to provide detailed information about the amount of sanctions it is seeking, together with a proposed order awarding sanctions. Plaintiff then has ten business days to explain why any aspect of that requested award would be unreasonable.

This constitutes the decision and order of the court. It is a written opinion.

The Clerk of Court is respectfully directed to terminate the motion at Docket No. 31. We will close the case after the sanctions award is reduced to a judgment.

Dated: March 3, 2023

*[signature]*

U.S.D.J.

BY ECF TO ALL COUNSEL